UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:05-CR-00198 |
| v. | ) | |
| | ) | Hearing:  October 18, 2013 |
| EDDIE LEE WOODWARD, JR., | ) | |
| aka Edgar Lee Woodward, Jr. | ) | The Honorable James C. Cacheris |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO
DEFENDANT'S SUPERVISED RELEASE VIOLATIONS**

The United States of America, through its attorneys, hereby files its position on the

supervised release violations of the Defendant, Eddie Lee Woodward, Jr., ("Defendant"),

pursuant to Title 18 of United States Code ("U.S.C."), Section 3583, and Rule 32.1 of the

Federal Rules of Criminal Procedure.  The United States submits that Defendant violated the

conditions of his supervised release by committing new crimes, to wit: 1) false personation of a

federal officer in violation of Title 18, United States Code, Section 912; and 2) unlawful

possession of a colorable imitation of an official badge, in violation of Title 18, United States

Code, Section 701.  The Defendant pleaded guilty to these offenses on October 7, 2013, in front

of U.S. District Court Judge Anthony J. Trenga (U.S. v. Edgar Lee Woodward, Jr., 1:13-cr-

00332) and is being detained pending sentencing on November 15, 2013.  As part of the

Defendant's Plea Agreement in that case, the United States agreed to recommend that the

Defendant receive a sentence at the low end of the U.S. Sentencing Guidelines ("Guidelines")

1

range for the instant supervised release violations.  The parties also agreed that, for purposes of the supervised release violations, the Defendant's Criminal History Category is III and the resulting Guidelines range is 8 to 14 months.  Therefore, the United States respectfully recommends that this Court: *i*) find the Defendant in violation of the conditions of his supervised release; *ii*) revoke his supervised release; and *iii*) sentence him to eight (8) months of incarceration, to run consecutively to any sentence imposed in the case before Judge Trenga, followed by a period of supervised release.

### A. Background

On May 17, 2005, the Defendant pleaded guilty to a one-count criminal information for Conspiracy to Distribute Fifty (50) Grams or More of Crack Cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.  On August 5, 2005, the Defendant was sentenced to 120 months of imprisonment, to run concurrent with his state sentence and with credit for time served.  This term of imprisonment was to be followed by five years of supervised release with special conditions, to include substance abuse testing and treatment as directed by the probation officer.  On May 15, 2009, upon a Rule 35(b) Motion for Reduction of Sentence filed by the United States, this Court reduced the Defendant's sentence to a term of 60 months of imprisonment.  The Defendant was released from prison and began his five-year term of supervised release on December 4, 2009.

### B. Current Alleged Violations

On July 17, 2013, U.S. Probation Officer Vakida J. Wilson filed a Petition on Supervised Release alleging that the Defendant had violated the conditions of his supervised release by committing new crimes.  The Petition alleges that the Defendant was arrested on July 12, 2013,

by the Federal Bureau of Investigations, and charged with false personation of a federal officer in violation of Title 18, United States Code, Section 912, and unlawful possession of a colorable imitation of an official badge, in violation of Title 18, United States Code, Section 701.  As the Addendum to Petition on Supervised Release filed on October 15, 2013 reflects, the Defendant pleaded guilty to those offenses on October 7, 2013, in front of U.S. District Court Judge Anthony J. Trenga in the matter U.S. v. Edgar Lee Woodward, Jr., 1:13-cr-00332.  He is now being detained pending sentencing on November 15, 2013.  As part of the Defendant's Plea Agreement in that case (which is submitted with this Position Paper), the United States agreed to recommend that the Defendant receive a sentence at the low end of the Guidelines range for the instant supervised release violations.  *See* Plea Agreement ¶ 5.  The Plea Agreement reflects the parties' agreement that, for purposes of the supervised release violations, the Defendant's Criminal History Category is III and the resulting Guidelines range is 8 to 14 months.  *Ibid*.

     The facts underlying the charges to which the Defendant has pleaded guilty are as follows.  On or around January 2013, in an apparent attempt to explain away his prison record, the Defendant began falsely asserting to his girlfriend that he was a DEA agent and had worked undercover for the DEA in prison.  The Defendant made similar claims to at least one previous girlfriend in 2011.  In support of his claims to his new girlfriend, the Defendant displayed a colorable imitation of a DEA badge to his girlfriend on at least three occasions and to his girlfriend's sister on one occasion.  In conversations with his girlfriend, the Defendant made references to his work as a DEA agent, pointed out other "undercover" agents at the gym where he worked as a personal trainer, claimed to have made frequent trips to Colombia for the DEA, and drove his girlfriend through neighborhoods where he claimed to have conducted drug busts.

The defendant conducted surveillance on his girlfriend by following her, or having a friend follow her, and sending her photos of her car so she would know that he knew where she was. He also conducted surveillance on his girlfriend's estranged husband and asked his girlfriend to hide surveillance devices in her estranged husband's home, which she declined to do. The Defendant also purchased surveillance equipment during this time period, including a mini-camera and a USB recording pen.

The Defendant began living with his girlfriend in early 2013, shortly after they began dating, although he continued to represent to his probation officer that he was living in his mother's house. The relationship was tumultuous because the Defendant was highly unstable, angered easily, and was prone to rages and jealousy. One argument began after the girlfriend's two-year old son found hypodermic needles that the Defendant had thrown in her trashcan. The Defendant lied to his girlfriend and told her they were for insulin shots. The Defendant was also controlling and insisted that his girlfriend change her phone number and give him access to her phone records. On at least one occasion, the Defendant smashed his girlfriend's phone during an argument and ripped her clothing. The Defendant's girlfriend contacted one of his former girlfriends through text messaging, to ask if he had ever "put his hands on her" and told her that he was scaring her and wouldn't leave her house.

On or about March 14, 2013, the Defendant and his girlfriend had an argument, in the presence of her sister, during which he claimed to be investigating his girlfriend's estranged husband for cocaine trafficking and suggested that she could be a co-conspirator. The Defendant's girlfriend took these claims seriously and shared them with her estranged husband, a former Marine. After that incident, the girlfriend's estranged husband and her parents began to

4

look into the Defendant's background and eventually made contact with the U.S. Attorney's Office for the Eastern District of Virginia, where the Defendant was still on supervised release. The Defendant was arrested on July 12, 2013, and had in his possession anabolic steroids and other pills.  Pursuant to a search warrant, the FBI search the Defendant's car and found a mini pocket camera, a USB recording pen, and a safe filled with pills and vials of liquid that the Defendant admitted were steroids.  The Defendant admitted to the FBI that he had been selling steroids.  A search of the Defendant's residence resulted in the seizure of the fake DEA badge, which was found on top of a TV armoire in the Defendant's bedroom, although the Defendant told the FBI that he had thrown it away months before.

### C. Legal Standards

Supervised release revocation hearings are not formal trials. *United States v. Woodrup*, 86 F.3d 359, 362 (4th Cir. 1996).  A court need only find by a preponderance of the evidence that the defendant violated a requisite condition to support a revocation order. *See* 18 U.S.C. § 3583(e)(3); *United States v. Copley*, 978 F.2d 829, 831 (4th Cir. 1992).  Upon finding by a preponderance of the evidence that a defendant violated a condition of supervised release, a court may: 1) revoke supervised release and impose a term of imprisonment equal to all or part of the supervised release term authorized by statute, without credit for time served; 2) extend the term of supervised release if less than the maximum authorized term was ordered; or 3) modify, reduce, or enlarge the conditions of supervised release.  *See* 18 U.S.C. § 3583(e).

Title 18, United States Code, Section 3583(e) directs the Court to consider certain factors outlined in Title 18, United States Code, Section 3553(a) when modifying or revoking supervised release.  Title 18, United States Code, Section 3553(a) provides that, in determining a

5

sentence, the Court must consider the nature and circumstances of the offense and the characteristics of the defendant.  In addition, the Court must consider the need for the sentence "to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant."  *See* 18 U.S.C. §§ 3553(a)(1) and (a)(2)(B)-(D).  The Guidelines provide non-binding policy statements regarding supervised release violations.  *See* U.S.S.G. § 7A1; *see also United States v. Davis,* 53 F.3d 638, 640 (4th Cir. 1995).  The Guidelines also present recommended incarceration ranges for supervised release violations based upon the defendant's criminal history category and the nature of the violation.  *See* U.S.S.G. § 7B1.4. Upon revocation of supervised release and imposition of a term of imprisonment, a court may also impose an additional term of supervised release to be completed after imprisonment.  18 U.S.C. § 3583(h).  This additional period of supervised release may not exceed the term authorized by statute for the underlying offense, minus any term of imprisonment imposed upon revocation of supervised release.

### D. Analysis

If the Court determines by a preponderance of the evidence that Defendant violated the terms of his supervised release, it may revoke supervised release and require Defendant to serve in prison all or part of the term of supervised release authorized for the original offense. *See* 18 U.S.C. § 3583(e)(3).  Defendant's underlying offense of Conspiracy to Distribute Fifty (50) Grams or More of Crack Cocaine, in violation of Title 21, United States Code, Section 846, constitutes a Class C felony. 18 U.S.C. § 3559(a)(3).  The Court could therefore sentence the Defendant to a maximum of two years of incarceration, without credit for time previously served on post-release supervision. 18 U.S.C. § 3583(e)(3).  Defendant's most serious supervised

6

release violation – false personation of a federal officer in violation of Title 18, United States Code, Section 912 – constitutes a Grade B violation under the Guidelines.  U.S.S.G. § 7B1.1(a)(2).  Defendant was a Criminal History Category III at the time of sentencing; thus, the Guidelines advise a sentencing range of 8 to 14 months of imprisonment. U.S.S.G. § 7B1.4(a).

**E. Recommendation**

The United States respectfully recommends that this Court: *i*) find the Defendant in violation of the conditions of his supervised release; *ii*) revoke his supervised release; and *iii*) sentence him to eight (8) months of incarceration, to run consecutively to any sentence imposed in the case before Judge Trenga, followed by a period of supervised release.

Respectfully submitted,

DANA J. BOENTE
ACTING UNITED STATES ATTORNEY

By:      **/s/**
Beth Collier Groves
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:    (703) 299-3980
Email:  beth.groves@usdoj.gov

Kimberly Riley Pedersen
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email:  Kimberly.riley.pedersen@usdoj.gov

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 16, 2013, I filed the foregoing with the Clerk of Court

using the CM/ECF system, which will send an electronic copy to the following:

Peter David Greenspun
Greenspun, Shapiro, Davis & Leary, PC
3955 Chain Bridge Road
Second Floor
Fairfax, VA 22030
pdg@greenspunlaw.com

Respectfully Submitted,

Dana J. Boente

_____/s/_____
Beth Collier Groves
Special Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314-5794
Phone: (703) 299-3700
Fax: (703) 299-3980
beth.groves@usdoj.gov